**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SYLVIA DEFRANCO, et al.,** | ) | **Case No.  1:12 CV 1387** |
| | ) | |
| **Plaintiffs,** | ) | **Judge Dan Aaron Polster** |
| | ) | |
| **vs.** | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| **ROBERT K. WEISDACK, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

Presently pending and ripe before the Court are two case-dispositive motions:

1.    Motion for Summary Judgment of Defendants Lorrie A. Sass and Rebecca Schlag ("Prosecutors' Motion") (**Doc #: 12**); and

2.    Motion to Dismiss or in the Alternative Motion for Summary Judgment of Robert K. Weisdack, Donald T. Zambory, Sandra Uecke, R.D. and Michael Tusuck, R.S. ("Remaining Defendants' Motion") (**Doc #: 8**).

For the following reasons, the Court **GRANTS** both Motions.

## I.  FACTUAL BACKGROUND

This case arises from the 1990 purchase of a ten-acre property situated at 11522 Mayfield Road in Munson Township, Geauga County, Ohio by Plaintiffs Sylvia and Anthony DeFranco (collectively, "Plaintiffs") which they purchased from a man named George Paolucci.

In the mid-1990s, a series of actions were commenced by the Munson Township Zoning Inspector and the Geauga County health authorities against Plaintiffs, alleging that the structure on the property was too small to qualify as a residence under the relevant Munson Township Zoning Resolution, and that the septic system contravened Geauga County health regulations.

In May 2003, Munson Township Zoning Inspector Donald T. Zambory initiated an action for injunctive relief, seeking to enjoin Plaintiffs from using the structure as a residence without obtaining variances pertaining to the size of the structure, and a permit verifying that an on-site wastewater disposal system has been secured.  Following a bench trial, the court issued a decision in March 2005 including findings of fact and conclusions of law, granting the injunctive relief against Plaintiff.  *See Zambory v. DeFranco*, 2008-Ohio-6556 ¶¶ 4-6 (Ohio App. 11 Dist. 2008).  Plaintiff did not appeal this decision.  *Id*.

While that case was pending, Plaintiffs filed, in 2004, a fraud and breach of contract action against Paolucci in the Geauga County Court of Common Pleas, contending that he knew Mr. DeFranco intended to live in the structure until he could build a new house, urged him to live in the structure, and knew he was already living in the structure during the six-month period before Plaintiffs executed an option to purchase the property.  The DeFrancos dismissed the action in April 2006, then refiled it in July 2006.  Paolucci filed counterclaims against Plaintiffs for abuse of process and malicious prosecution.  Following a bench trial, the court ruled in favor of Paolucci, finding no merit in any of Plaintiffs' claims.  Plaintiffs appealed, and in 2009, the trial court's ruling was affirmed.  *DeFranco v. Paolucci*, 2009-Ohio-2441 (Ohio App.11 Dist., 2009).

In November 2007, Plaintiffs sought to reopen the aforementioned May 2003 zoning action that was decided adversely to them in March 2005, by filing a Rule 60(b) motion for relief from judgment.  Therein, Plaintiffs attacked the adverse ruling on the basis that the judge who tried the zoning case (Forrest W. Burt) was the same person who, 17 years earlier and as then-Assistant Geauga County Prosecutor, filed a complaint on behalf of the Zoning Inspector against

the Paolucci's. Plaintiffs sought to overturn his decision based on judicial bias and/or the appearance of impropriety. The Geauga County Common Pleas Court transferred the Rule 60(b) motion to a different judge (David L. Fuhry) who, after briefing, denied Plaintiffs' motion. Judge Fuhry ruled that, because Plaintiffs failed to appeal the March 2005 decision, they could not now seek to reverse it in the guise of a Rule 60(b) motion. On December 12, 2008, the ruling was affirmed on appeal. *Zambory*, 2008-Ohio-6556 ¶ 25.[1]

On June 4, 2012, Plaintiffs filed the instant complaint against the following defendants: the Geauga County Health Commissioner (Robert K. Weisdack), a Zoning Inspector (Donald T. Zambory), two Assistant Prosecuting Attorneys (Lorrie A. Sass and Rebecca Schlag), and two Geauga County Health Department officials (Sandra Uecke and Michael Tusuck). Plaintiffs allege that Defendants have violated their due process and equal protection rights under the 14th Amendment (Count 1), the deprivation of their property without just compensation in violation of the 5th Amendment (Count 2), the unlawful search of their property in violation of the 4th Amendment (Count 3), and some unspecified claim under 42 U.S.C. § 1983 (Count 5). Plaintiffs further allege that Defendants have violated the Fair Housing Act under Title VIII of the Civil Rights Act of 1968 (Count 4). Finally, Plaintiffs allege a "takings" claim based on "[t]he theory of Inverse Condemnation" (Count 6) and a claim for intentional infliction of emotional distress (Count 7).

---

[1] In paragraphs 45 and 46 of the Complaint, Plaintiffs allege that a new person became the President of the Board of Health of Geauga County in December 2010 and, thereafter, Mrs. DeFranco discussed her case with him; in January 2011, he told her that her system had not been tested and that it could not be condemned without a test; and, in July 2011, Defendant Weisdack told her that they would be willing to conduct a test. Plaintiffs do not, however, allege whether any tests were in fact conducted, who conducted those tests and, most importantly, what the test results were. Plaintiffs also do not assert what state procedures they have initiated and exhausted in order to address these various issues.

As a preliminary matter, the Sixth Circuit does not recognize direct constitutional claims, like those asserted in Counts 1, 2 and 3, because 42 U.S.C. § 1983 is the *exclusive* remedy for constitutional violations committed by state actors.  *Valerio v. Dahlberg*, 716 F.Supp. 1031, 1036 (S.D. Ohio 1988) (citing *Thomas v. Shipka*, 818 F.2d 496, 499 (6th Cir. 1987) (emphasis added).  Conversely, one cannot allege a § 1983 claim, as asserted in Count 5, without alleging a specific underlying constitutional violation.  Although the omissions could be grounds for dismissing these four Counts (particularly where Plaintiffs are represented by counsel), the Court will liberally construe Counts 1, 2, 3 and 5 as § 1983 claims.

## II.  ANALYSIS

### A.    Prosecutors' Motion for Summary Judgment

Defendants Lorrie Sass and Rebecca Shlag move for summary judgment pursuant to Federal Rule of Civil Procedure 56.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Pro. 56(a).   The party that bears the burden at trial must, after adequate time for discovery, offer enough evidence to establish the existence of every element in that party's case.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The Court must draw all reasonable inferences in the light most favorable to the nonmoving party.  *LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 378 (6th Cir. 1993).  If, after reviewing the record as a whole, a rational factfinder could not find for the nonmoving party, summary judgment is appropriate since there is no genuine issue of material fact for determination at trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

-4-

The Prosecutors filed the pending Summary Judgment Motion, arguing that they are absolutely immune from the § 1983 claims because, at the time of any involvement with Plaintiffs, their conduct was undertaken within the course and scope of their employment and as an integral part of the judicial process.  (Doc #: 12.)  They also contend that the statute of limitations bars the § 1983 claims against them.  (Id.)  As such, they are entitled to judgment as a matter of law.  (Id.)  The Court agrees.

A review of the allegations in the Complaint pertaining to the Prosecutors shows that the activity complained of was undertaken within the course and scope of their employment as prosecutors.  (Doc #: 1 ("Comp.") ¶¶ 12, 24, 25, 26-31, 33-38, 42-43.)  "Prosecutors are entitled to absolute immunity for functions that are an integral part of the judicial process." *Hatchett v. City of Detroit*, No. 10-1718, 2012 WL 3538598 (6th Cir. Aug. 17, 2012) (citing *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2012)).  "This immunity extends to suits 'arising out of even unquestionably illegal or improper conduct by the prosecutor so long as the general nature of the action in question is part of the normal duties of a prosecutor.'"  *Id.* (quoting *Cady v. Arenac County*, 574 F.3d 334, 340 (6th Cir. 2009)).  Accordingly, Defendants Sass and Schlag are absolutely immune from civil liability alleged in Counts 1 through 7.[2]

Moreover, Defendant Sass avers, and it is undisputed, that she has not been a Geauga County Assistant Prosecutor since May 2000.  (Doc #: 12-1 ¶ 9.)  "Actions brought pursuant to 42 U.S.C. § 1983 apply the statute of limitations from a state's general personal injury statute." *Rodriguez v. City of Cleveland*, 439 Fed. Appx. 433, 458 (6th Cir. 2011) (quoting *Trzebuckowski*

---

[2]The Complaint is entirely unclear as to which Counts apply to which defendants. Because this is unclear, the Court will presume that each Count is asserted against each defendant.

-5-

*v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003)).  Thus, for § 1983 actions brought in Ohio, a two-year statute of limitations applies.  *Id*. (citing *Trzebuckowski*, 319 F.3d at 855-56).  The statue begins to run when the plaintiff knows, or has reason to know, of the injury which is the basis of the action.  *Id*. (citing *McCune v. Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988).  Since it is undisputed that any connection Defendant Sass had with Plaintiffs concluded in 2000, the § 1983 claims against her are time-barred.

Defendant Schlag avers, and it is undisputed, that the § 1983 claims against her accrued, at the very *latest,* in 2008 when the Geauga County trial court issued its adverse ruling against Plaintiffs.  Since Plaintiffs did not file their § 1983 claims against Defendant Schlag until June 2012, they are time-barred as well.

Because Defendants Sass and Schlag are immune from suit and the statute of limitations has expired on the § 1983 claims against them, the Court grants the Prosecutors' Motion.

The remaining Defendants are the Geauga County Health and Zoning Defendants: Weisdack, Zambory, Uecke, and Tusick ("Remaining Defendants").

**B.    Equal Protection Claim**

Count 1 alleges a deprivation of property absent equal protection and due process in violation of the 14th Amendment.  The Court will address the equal protection claim first.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "[U]nadorned, the-defendant-unlawfully-harmed me accusations" or mere recitals of the elements of a cause of action are insufficient to survive a 12(b)(6) motion.  *Iqbal*, 556 U.S. at 678.  Plaintiffs have failed to meet this pleading standard.

To state an equal protection claim, a party must claim that the government treated similarly situated persons differently.  *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 574 (6th Cir. 2008) (citing *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992)).  The Supreme Court has recognized successful equal protection claims brought by a class of one where the plaintiff alleges that he or she has been treated differently from other similarly situated individuals.  *Id.* at 575 (citing *Willowbrook v. Olech*, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)).  Plaintiffs fail to allege that they have been treated differently from other similarly situated persons, let alone articulate any specific examples of how they have been treated differently.  To the extent Counts 1 and 5 purport to assert an equal protection claim, they are dismissed.

**C.  Procedural Due Process / Takings Claim**s

The procedural due process, takings and inverse condemnation claims asserted in Counts 1, 3, and 6 are interrelated.  The Remaining Defendants move to dismiss these Counts because they contend the Court lacks subject matter jurisdiction over them.

In addition to equal protection allegations, Count 1 alleges that Plaintiffs were deprived of their property without due process.  Count 2 (in addition to referencing the Magna Carta and repeating the due process allegations asserted in Count 1) alleges that Plaintiffs "experienced" a deprivation of their property without just compensation in violation of the 5th Amendment.

-7-

(Comp. ¶ 73, 74.)  Count 6 alleges a takings claim based on "the theory of inverse condemnation."[3]  (See id. at 22.)

The Sixth Circuit has held that a federal due process claim alleging that a zoning decision constitutes a taking, as asserted in Count 1, is ancillary to the takings claim asserted in Count 2. *Braun*, 519 F.3d at 571-72.  The Sixth Circuit has also held that, although a 5th Amendment takings claim appears to present a clear basis for federal question jurisdiction, "the Supreme Court has ruled that constitutional takings claims are not ripe for federal review until state compensation procedures, assuming they exist and are adequate, have been exhausted."  *Texas Gas Transmissions, LLC v. Butler County Bd. of Comm'rs*, 625 F.3d 973, 976 (6th Cir. 2010) (quoting *River City Capital, LP v. Bd. of County Comm'rs, Clermont Cnty., Ohio*, 491 F.3d 301, 306 (6th Cir. 2007), in turn discussing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)).  Thus, before exercising subject matter jurisdiction over a takings claim, the district court must determine whether the relevant state compensation procedures are reasonable, certain, and adequate.  *Id.* (citing *River City Capital*, 491 F.3d at 307).  The Sixth Circuit has unambiguously held that Ohio affords a reasonable, certain and adequate procedure through an action for mandamus,

---

[3]Specifically, Count 6 provides:

73.  It has been established doctrine at least since Justice Holmes' opinion for the Court in Pennsylvania Coal Co. v. Mahon, 260 U.S. 393 (1922), that "the general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking."

74. The Plaintiffs in the case at bar absolutely credit what happened to their land at the hands of the Geauga County Health Department and the Munson Townshp Zoning Regulation as a "taking."

(Comp. ¶ 73.)

under sections 163.01 to 163.22 of the Ohio Revised Code, to compel a government entity to institute appropriation proceedings against the private property owner.  *Id.* (citing *Coles v. Granville*, 448 F.3d 853, 865 (6th Cir. 2006)).  The Complaint does not contain a single allegation that Plaintiffs have availed themselves of the inverse condemnation procedures set forth in  O.R.C. § 163.01 *et seq*.  Until the state courts have ruled on the inverse condemnation claim, this Court cannot determine whether a taking has occurred and, thus, cannot address the procedural due process claim.  Because, as a matter of law, the state inverse condemnation procedures are constitutionally adequate, and Plaintiffs have failed to exhaust their state remedies, the Court lacks subject matter jurisdiction over Counts 1 (to the extent it asserts a due process claim), 2, 5, and 6.

> **D.    Fourth Amendment Claim**

The Remaining Defendants argue that the Fourth Amendment claim is time-barred and, in any event, Plaintiffs have failed to state a Fourth Amendment Claim.  Plaintiffs allege that certain Defendants conducted two constitutionally illegal searches of their property.  Specifically, Plaintiffs allege that (1) in 1990, Defendant Zambory entered their property without their permission and took a picture of their house (Comp.¶ 18) and, (2) in July 1996, Defendant Uecke sent Plaintiffs a letter stating that she was on their property on June 19, 1996, at which time she observed that the septic system had overflowed discharging untreated effluent onto the ground's surface (Id. ¶ 20).

Actions under § 1983 must be brought within the two-year statute of limitations.  *Rodriguez*, 439 Fed. Appx. at 458; *Trzebuckowski*, 319 F.3d at 855-56.  The Fourth Amendment claim against Defendant Zambory accrued more than twenty years ago, and the claim against

Defendant Uecke accrued more than fifteen years ago; thus, they are barred by the applicable statute of limitations.  Because these claims are plainly time-barred, the Court need not determine whether they also fail to state a claim under Rule 12(b)(6).

### E.    Fair Housing Claim

In Count 4, Plaintiffs allege the Remaining Defendants violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq*.  Under the FHA, individuals are protected from discrimination in housing on the basis of race, color, religion, sex, handicap, familial status, or national origin.  *Id.*  The Complaint is entirely devoid of any allegations establishing that Plaintiffs belong to a protected class, or how the Remaining Defendants' actions discriminated against that class.  Rather, Plaintiffs allege, "In the instant case there appears to be discrimination *of some sort* in the way the Plaintiffs were treated over the last two decades." (Comp. ¶ 66 (emphasis added).)  While a complaint need not contain detailed factual allegations, it does require more than labels and conclusions.  *Twombly*, 550 U.S. at 555.  The Court finds that this allegation is an "unadorned, the-defendant-unlawfully-harmed me accusation" that the Supreme Court has determined is insufficient to survive a 12(b)(6) motion.  *Iqbal*, 556 U.S. at 678*.*  As such, Count 4 is dismissed.

### F.    Intentional Infliction of Emotional Distress

The Remaining Defendants ask the Court to dismiss the sole remaining claim for intentional infliction of emotional distress.  To establish a claim for the intentional infliction of emotional distress, the plaintiff must show that the defendant intended to cause the plaintiff serious emotional distress, the defendant's conduct was extreme and outrageous, and the defendant's conduct proximately caused the plaintiff's severe emotional distress.  *Yeager v.*

*Local Union 20*, 6 Ohio St.3d 269, 374 (1983) (adopting the Restatement of the Law 2d, Torts (1965), 71, Sec. 46(1)); *Pierce v. Woyma*, 2012-Ohio-3947 at ¶¶ 26-29, 2012 WL 3758631, at *6 (Ohio App. 8 Dist. Aug. 30, 2012).  Extreme and outrageous conduct must go beyond all possible bounds of decency, and the mental anguish suffered by the plaintiff must be so serious in nature that no reasonable man could be expected to endure it.  *See, e.g.*, *id.*

Here, Plaintiffs allege:

76.     What the Plaintiffs in this case were subjected to at the hands of government over the last two decades cannot be described any better than what it was: intentional infliction of emotional distress.  The only mystery is: why?

(Comp. ¶ 76.)  That's it.  Not only do Plaintiffs neglect to mention the elements of an emotional distress claim, they fail to assert any factual allegations supporting that claim.  Accordingly, Count 7 is dismissed.

### III. CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the Prosecutors' Motion for Summary Judgment (**Doc. # 12**).  The Court **GRANTS** the Remaining Defendants' Motion (**Doc #: 8**).

**IT IS SO ORDERED.**


*/s/ Dan A. Polster    November 7, 2012*
**Dan Aaron Polster**
**United States District Judge**